Thank you, Your Honor. May it please the Court, my name is Matthew Wessler, and I am counsel for the defendants' appellants, Rhonda Rose and Nelson Langer Engel. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. The core inquiry in this case is what do the words appropriate equitable relief mean as Congress used them in ERISA section 502A3. The U.S. Supreme Court has made crystal clear that in interpreting these words, a court's job is to consult equitable treatises and authorities and to apply principles of equity. That's what the Supreme Court said in Knudsen, Sereboff, and most recently in Cigna v. Amara, and that's what the Third Circuit has just held in U.S. Airways v. McCutcheon. Against this weight of authority, CGI contends that the phrase appropriate equitable relief actually means that a court must categorically enforce the terms of a plan as written. That interpretation, however, is contrary to both the language and purpose of the statute for the following reasons. First, the simple enforcement of plan terms as written is a classic legal not equitable remedy. Indeed, if there are any doubt about this, the Supreme Court recently reaffirmed this exact point in Cigna. What the Court said there was that the power to enforce contracts as written is a power of a court of law, while, quote, the power to reform contracts is a traditional power of an equity court. Thus, requiring courts to categorically enforce the terms of a plan as written, as CGI contends must occur here, would violate the animating distinction between a court of law and a court of equity. Cigna, in fact, interpreted the exact same statutory provision that is at issue here, Section 502A3, and the Court went on to explain precisely why this distinction between law and equity is important. And that is because when a party seeks equitable relief from a court sitting in equity, that relief is governed by principles of equity, not by principles of contract law. And under these principles of equity, a court is not to simply enforce the plan terms as written, but rather to determine how much a defendant would be unjustly enriched for claims like those at issue here. Second, CGI's interpretation of the statute is also belied by looking more broadly at the entire ERISA remedial scheme. As it turns out, there's one statutory provision that does explicitly authorize for a party to obtain legal relief based on the terms of its plan, and this is Section 502A1b. This section authorizes a party to enforce his rights under the terms of a plan, and that's a quote. In other words, under this provision, a party can obtain a measure of legal relief by enforcing the terms of the plan or the contract, but Congress explicitly barred ERISA plans from pursuing relief under this provision. As the Third Circuit in McCutcheon just explained, Congress gave plan beneficiaries greater rights than plan fiduciaries to enforce the terms of a benefit plan. A beneficiary can obtain legal relief by strictly enforcing plan terms, but a plan fiduciary like CGI is limited to obtaining only that relief which was traditionally available in equity. Third, contrary to CGI's argument, Sereboff did not hold or even suggest that claims for equitable reimbursement must be strictly enforced according to the terms of the plan. To support its claim in this regard, CGI focuses on one sentence of that opinion where the court noted that, quote, the parcel of equitable defenses like the make-whole rule are, quote, beside the point. But this statement is relevant only to the threshold question that the court in Sereboff was deciding, which is whether a plan could even bring a claim for equitable reimbursement in the first place. The point the court was trying to make there is that there are some equitable remedies, like equitable subrogation, that are inherently subject to equitable defenses like the make-whole rule, and therefore they do not arise until the beneficiary has been made whole. But equitable liens, on the other hand, the court explained, are not inherently defeated by an equitable defense like the make-whole rule, and so the remedy can be sought even where a beneficiary has not been made whole. And I would point the court's attention to the Third Circuit's decision in McCutcheon at page 675 where they explain precisely this distinction. I have a question. I'm wondering if there's ever been a case that specifically says that ERISA medical plan is precluded from requiring 100 percent payback under these circumstances ever in the country. Yes, Your Honor. The U.S. Airways just decided this issue. Sorry, the Third Circuit just decided this issue in U.S. Airways v. McCutcheon. We filed a supplementary letter to the panel because it was issued after the briefing was complete in this case. But in McCutcheon, Your Honor, the plan came in and asserted that it was entitled to 100 percent reimbursement in an identical situation as what occurred here. And what the Third Circuit said was, no, you're not entitled to obtain 100 percent reimbursement based simply on the enforcement of the terms as written. And so while I think before the Third Circuit decided McCutcheon, the answer to your question may have been no. Now the answer is, in fact, yes. And I think the key distinction between what occurred before McCutcheon and what happened in McCutcheon was that the Supreme Court decided Cigna. And all of the cases that were decided before Cigna, so Schenck and O'Hara, and even those cases that were decided before Sereboff, Ryan, Bowman Hatt, this Court's 1995 decision in Barnes, they all believed and understood that these claims were governed by strict contract law. And what Cigna reaffirmed was that, in fact, they're governed by principles of equity. And the Third Circuit in McCutcheon explained that when a claim is pursued in equity, those principles that govern are different from basic rules of contract law. Well, if I understand, I may not have followed your exchange entirely, but the Third Circuit didn't say that there can never be 100%. It said that, as I understand it, that the principle of unjust enrichment limits what you can get. I'm sorry, Your Honor. If I misspoke, I didn't intend that. That's absolutely correct. And I take it that your point here is that this is to permit what happened would be unjust enrichment. And would you just explain a little bit why that is? Yes, Your Honor. Unjust enrichment, if you go and you look at the treatises on equity, if you look at Palmer, if you look at Dobbs, if you look at the restatement on restitution, what they make clear is that when a party seeks to enforce a claim for reimbursement by virtue of an equitable lien or a constructive trust, the amount that that party is entitled to recover is the amount that the defendant has been unjustly enriched. And that measure of relief is based on the amount that the defendant has double recovered for, so the amount that they recovered twice for the same harm. And in cases like this in which an injured beneficiary, an injury victim, recovers only a fraction of their total amount of damages, the only amount of recovery that a plan is entitled to receive is the amount of that limited recovery that is allocable to the medical expenses that it paid. It's not entitled to come in and say, we paid $100,000, we get all of it, irrespective of however much of that underlying recovery actually constitutes medical damages. What they get is the amount of that recovery that is reasonably allocable to the medical damages that they paid. And in a... Mr. West, if I could interject a question. I feel like that argument gets us a little, possibly the cart ahead of the horse, because that issue isn't precisely before us now. Like the issue before us is, did the court err by just applying the contract? And I might be looking at this overly simplistically, so correct me if I'm wrong in this, but it seems to me that it doesn't really matter what a contract remedy would have been. The question is a statutory interpretation of the ERISA provision, what does appropriate equitable relief mean? And if the court erred in applying, didn't apply that standard, wouldn't we just send it back to the court to apply that standard and not at this stage try to tell the district court, you have to follow this formula or that? Yes, Your Honor. This court could remand this case for the district court to essentially apply those principles of equity and fashion appropriate relief based on those principles. That's what the Third Circuit did in U.S. Airways v. McCutcheon. I think the one distinction here that makes the possibility that this court could in fact resolve this case entirely is that the parties here have stipulated to the total amount of Ms. Rose's damages. That did not occur in McCutcheon. And so in this case, there's a stipulation, and there's no dispute that the total amount of Ms. Rose's damages were approximately 1.75 million, and she only recovered for 21, I think it's .44 percent of those damages. And under the principles of equity that apply, unjust enrichment, the proportional amount of the plan's recovery would be 21.44 percent of the medical expenses that it paid less a proportional amount deduction for. I certainly, I understand that. But I'm not sure that's the only equitable solution. And George Palmer was one of my law professors at law school, and I think back and I say, gosh, how would Professor Palmer have viewed this statutory language? And I'm not entirely sure, feeling like I'd like to let a district court wrestle. I'm just speaking as one judge. I'd like to let a district court wrestle with that issue first if we have to remand it. Yes, Your Honor, and that would be, I think, a perfectly consistent approach that is exactly what the Third Circuit did in U.S. Airways. I mean, it explicitly said there we don't decide how much relief the plan is entitled to. We remand to the district court to allow it in the first instance to apply the proper principles of equity and fashion a measure of relief that does what it's supposed to do when it sits as a court in equity. Well, but is it, I haven't read U.S. Air that closely. Was it your position that in U.S. Air they didn't have the figures before it, that the court as to what the total expenses had been, what the reimbursement was? That's right. I mean, there were some record evidence about the damages, but there was no stipulation that the parties had entered into about just exactly how much the beneficiary had suffered in her damage calculation. I'd like to just make one other point about CGI's argument, and that's that one of its core arguments here is that it points to other language in Section 502A3 that contains reference to enforcing plan terms. But this language does not substantively modify the approach that a district court is required to take in equity. All it does is it limits the availability of equitable relief to only those violations of a plan document and not to equitable relief at large for reasons untethered to an ERISA plan. And that's what the Supreme Court meant in Mertens when it said that Section 502A3, quote, does not, after all, authorize appropriate equitable relief at large, but only appropriate equitable relief for the purpose of redressing any violations or enforcing any provision of ERISA or an ERISA plan. And so I would like to make clear that what CGI is trying to do by shifting focus away from appropriate equitable relief is it's trying to bootstrap the relief it's entitled to into the one provision it can't seek relief under, 502A1B. And then just to respond to Your Honor's question, I think a little bit about the Schenck and O'Hara decisions. And these courts' decisions in those two cases, I think, are unpersuasive, as I think the Third Circuit made clear in McCutcheon. And the reason for that, Your Honor, is that the panels in those cases viewed these claims as ones of contract enforcement. They believed that the issue was whether they could construe the plan language as ambiguous or not. And if it was unambiguous, that the contract language should be simply enforced according to the terms of the plan. So, for instance, in O'Hara, the court there called the plan's claim one of a contractual right to full reimbursement. And so what they did was, these courts, they applied the same pre-Sereboff approach of basing relief solely on the language of the plan that this court said applied in the 1995 decision Barnes and that the Third Circuit said applied in Ryan and Bowman had. And I'll just note that if you read CGI's briefs, they're clear about this. They think that the pre-Sereboff approach applied by the courts in Ryan and Bowman had applies. They believe that the Schenck and O'Hara courts made their resolution based on these earlier decisions and that it's perfectly consistent and acceptable to apply these contract principles to the resolution of this claim. But I think what the Third Circuit explained, and I think the Third Circuit absolutely got it right, was that these courts failed to square their approach in the resolution of their claims with the limiting language of Section 502A3. And the court in McCutcheon said that these courts believed that any limitation on the enforcement of plan terms was under federal common law. And I think that's the key. That's why we know that these courts departed from the text of the statute, is that they said only if the plan language is ambiguous will we import federal common law to limit the availability of relief. And the reason that this court in Barnes and the Third Circuit in Ryan and Bowman had said that was because they didn't realize that there was a specific statutory provision of ERISA that governed these claims for equitable reimbursement. If this court reads Ryan and Bowman had or Barnes, you won't find anywhere in those decisions reference to Section 502A3. It simply was not the case that the courts understood anyone. It wasn't a mistake on their part. No one thought that these claims were properly advanced under Section 502A3. And the key turn here came when the Supreme Court decided Saraboff and said explicitly, claim for equitable reimbursement is governed by Section 502A3. And the problem with the Schenck and O'Hara courts is that they failed to accord that new conclusion any meaningful, they failed to give it any meaning, and they simply went back to the pre-Saraboff approach. But in Saraboff, they concluded, the ultimate conclusion was that the reimbursement was appropriate. The lien was valid. Respectfully, Your Honor, they did not conclude that the lien was appropriate. The only thing they reserved that question. I use the wrong word, that it was collectible. What word would you use? Collectible is fine, Your Honor. Okay. I just accidentally said appropriate. I meant collectible. Yes. They could collect. They could get the full amount of the money back. That was the conclusion. I would disagree with the last thing Your Honor said. They decided that the plan could bring the cause of action in the first place, but they declined to consider how much relief the plan is entitled to. And that's the question that was left open by footnote two in Saraboff. Right. That's the question that the Third Circuit addressed in McCutcheon, and that's the question that confronts this Court today. And so there's a kind of, there's a second, there's two questions. The first was decided by Saraboff, and that is, can a plan bring an equitable remedy for reimbursement? Can it obtain an equitable remedy for reimbursement? That was the question in Saraboff. And the Supreme Court said, yes, it's an equitable lien or a constructive trust. That's for the first time in 2006, the first time was, that was the first time the Supreme Court actually authorized plans to seek equitable remedies, like an equitable lien or a constructive trust. In the previous cases, in Knudsen, in Mertens, the Supreme Court had rejected plans efforts to obtain relief. And so Saraboff was the first time in which they did that. But what Saraboff declined to address was, assuming you have the right to relief, how much do you get? And that's the question that I think is presented to this Court. And there's a stark choice here between enforcing the plan terms as written under a legal contract set of rules or applying principles of equity. Your Honor, I see that I only have several minutes remaining, so I'd like to reserve the rest of my time for rebuttal. That's fine. We'll give you an extra minute on your rebuttal. Thank you, Your Honor. Okay. Mr. Lipschultz, we'd like to hear from you, please. Good morning, and may it please the Court. Noah Lipschultz on behalf of Plaintiff Cross-Appellant CGI Technologies and Solutions. I'd like to start out just by reminding the Court that the purposes of ERISA, when it was passed, and the various features of the statute revolve around several key principles. Number one, to establish uniformity. That is, if an employer sells funds and sponsors a benefit plan, the same terms are going to apply the same way whether you reside in Minnesota, Georgia, or California. That's the purpose behind a broad preemption clause. Now, when you have contractually defined benefits that the Supreme Court has said is the key purpose behind ERISA, to enforce contractually defined benefits, there's a written plan document. That written plan document applies to both the plan fiduciary, who needs to enforce it according to its terms, and applies to the plan participant who receives benefits under the terms of that plan. And in a particular case here, nothing under ERISA required CGI to pay welfare benefits to Ms. Rose because she was injured in a car accident. It did so voluntarily, and it did so according to certain conditions. Namely, if we provide this coverage that we don't have to do under ERISA, the exchange is that you're going to pay us back if you recover for a lawsuit, settlement, judgment, very broad recovery provisions. That is the quid pro quo. Nothing in ERISA bars that. ERISA says nothing about subrogation. That's definitely the contract language, quid pro quo. But here, aren't we dealing with the scope of recovery your client can get under a specific statutory provision 502A3? So don't we have to interpret what is appropriate equitable relief mean? Yes. Because you're entitled to get that appropriate equitable relief, but you're not entitled to get a contract remedy that is not appropriate equitable relief. Well, I want to answer your question by talking about how 502A3 has been interpreted because that is clearly a point of departure between the parties. Conceptually, am I stating that correctly in theory, at least that if it's appropriate equitable relief, you get it, but if it's a contract remedy that's not appropriate equitable relief, you don't? CGI's rights, you're correct, Your Honor, are limited to appropriate equitable relief within the meaning of Section 502A3. And what the Supreme Court has said about that provision is it encompasses forms of relief that were typically available in equity. That's how they interpreted it in Mertens. That's how they interpreted it in Great West, categories of relief typically available in equity. The only other place that they've interpreted that provision is in Verity, where they actually interpreted the word appropriate in Verity. It's the only Supreme Court case that I'm aware of that interpreted 502A3 in that modifier. And what they said in Verity is normally equitable relief will not be appropriate where ERISA elsewhere provides a remedy. That was the holding in Verity. That's what Justice Breyer said. Now it's undisputed here that the plan's only mechanism for enforcing its reimbursement provision is through 502A3. ERISA doesn't elsewhere provide a remedy. So under the Verity interpretation of the phrase, that does not constitute a limiting feature. Now why Sereboff is so critical here and why we have a departure in how we read Sereboff is Sereboff for the first time recognized that an equitable lien by agreement is a form of relief typically available in equity, therefore cognizable under Section 502A3. And that Sereboff has been universally interpreted before the McCutcheon case as expanding plans' rights to reinforce reimbursement provisions and is shining a spotlight on the contract terms. There isn't any question that an equitable lien by agreement is a contract. It feels like a contract. It's based on a contract. But that doesn't make it any less equitable because the Supreme Court in Barnes v. Alexander in 1914 acknowledged that an equitable lien by agreement is a valid form of equitable relief cognizable under 502A3. So what does that mean for purposes of today's argument? It means that it's not the same as a subrogation lien. It means that it's not the same as a form of equitable restitution. That's why in Sereboff the Court took great pains to distinguish between different types of equitable relief. And the distinctions that they lay out in Sereboff between, for example, an equitable restitution action and an equitable lien by agreement, it has consequences. First, the Court said they rejected the Sereboff's argument that certain requirements for equitable restitution needed to be engrafted upon an equitable lien by agreement. The Court said two different species of relief, the limitations that are applicable to equitable restitution, don't apply to equitable liens by agreement, number one. Number two, the Sereboffs argued that the limitations in equity on equitable subrogations liens, such as made whole, common fund doctrine, pro rata, they should apply to limit the plan's claims. And again, on page 368 of Sereboff, Justice Roberts rejected that argument. He said we're talking about an equitable lien by agreement, not an equitable subrogation claim. Those defenses are beside the point. We're not going to apply them to limit the plan's claim. We're not going to remand to the Fourth Circuit to say apply these equitable defenses. Instead, we're going to enforce the plan and require reimbursement with its terms because that's the nature of an equitable lien by agreement. And it may feel contractual, but Sereboff has settled the law here. The law now is an equitable lien by agreement is enforceable according to its terms. It would have made no sense for the Court to distinguish between equitable subrogation and these equitable defenses and say they don't apply in an equitable lien by agreement situation, a different species of relief. They're all cognizable under 502A3 because they're all forms of relief typically available in equity, but they have consequences. And I think that's where the Third Circuit in McCutcheon went very wrong because it said simply its thesis behind its ruling was if the claim arises in equity, equitable limitations apply. And then it proceeded to apply those equitable limitations. That completely ignores Justice Roberts' distinction between equitable liens by agreement and an equitable subrogation claim. There would have been no reason to make that distinction if those equitable defenses applied across the board merely because the claim sounded in equity. So, Mr. Lipschitz, therefore, would you ask us to adopt a rule that's like a clear split with the Third Circuit to just say they got the law wrong? There's already a split, Your Honor. So we would ask this Court to side with every other circuit who's looked at the issue. And I must respectfully disagree with Mr. Wessler, my learned adversary. The Schenck and O'Hara cases absolutely construed Section 502A3 in light of Sereboff and absolutely construed the phrase appropriate equitable relief. And they simply rejected the arguments that you could use appropriate as some wholesale modifier to say we're going to not enforce the plan terms. Or alternatively, we're going to look at it on a case-by-case basis. They are advocating a scenario by which there's no rule. So there's no backdrop rule. So when the parties, for example, are saying negotiations over a subrogation lien or an equitable lien by agreement, they don't know whether the plan language is going to be enforced or not. They're left to speculate on how a particular judge in a particular district in a particular locale may look at the issue. And in a case like this where the plan is seeking less than 10% of the total recovery, the plan may feel that that's not something they want to compromise on. If the amount that the plan seeks is a much greater portion of the settlement fund, they may be more inclined to settle. But the point is that those are decisions for the parties to make, and they have to be able to make them against the backdrop of a rule. And every court, every appellate court that has ever looked at a common fund disclaimer has enforced it. And McCutcheon didn't involve a common fund disclaimer. The Third Circuit in McCutcheon clearly found that the plan unambiguously required reimbursement. That's true. But there was no common fund disclaimer in that case. So even today and even with McCutcheon, there's no appellate court that has ever refused to enforce a common fund disclaimer. This court in Barnes enforced a made-whole disclaimer, or at least set a background rule. This court in Barnes told litigants in the Ninth Circuit, plan drafters, if you want to not have the make-whole rule apply, it's going to be the default, but if you don't want it to apply, you need to draft around it. Well, what would that rule mean if you drafted around it and it wasn't enforced? And there's no reason to treat a common fund disclaimer any differently. And that's what the court in Zerk v. O'Hara found, and they have the same backdrop rule as this court in Barnes. So the Eleventh Circuit's framework going into that case was made-whole doctrine applies unless you contract around it. Well, in that case, they contracted around it. The plan was clear, required 100% reimbursement whether or not the plan participant was made whole. There was a common fund reduction, and the court said the purposes of ERISA are served by adhering to plan language. I mean, it strikes me that a plan participant or beneficiary wouldn't think it's fair if they filed a claim for benefits under the plan that were clearly provided under the plan, and the plan turned around and said, we know that's in the plan, but you know what, we're not going to abide by it because we didn't really think this would happen. I thought that Mr. Wessler said that a plan beneficiary had a right to a legal benefit, a legal remedy of what the plan said they would get, whereas a fiduciary would be limited by the appropriate equitable relief language. Yeah, and I think what that implicates is Justice Roberts' statement from Saraboff where he said that if you're trying to equate in the enforcement of an equitable lien by agreement under Section 502A.3.B.2, and you're saying that's tantamount to seeking legal relief, that makes that section an empty promise. I agree. Now with the focus of equitable liens by agreement and the ability to enforce plan terms through a vehicle that the Supreme Court has now recognized is typically available in equity, the rights are essentially parallel in that regard. The plan has the right to enforce plan contract provisions that spell out what the party's rights and obligations are. RISA leads us into many thickets and complexities. What we're really talking about, though, here is equitable principles of restitution, I would think. I mean, isn't that really what this is about? Well, I disagree slightly, Your Honor, because, and here's why, that's why I mentioned at the outset that the Supreme Court in Saraboff distinguished between equitable restitution, equitable liens by agreement, and subrogation liens. And while those distinctions may seem arcane to many of us, they're still distinctions. Well, you're using restitution in a narrower sense than I was trying to use it. Somebody's trying to get back money. Correct. And I was just curious as to whether there was anything in the, there's a new restatement of restitution principles out, if you had looked at it, or if there was anything in there that we might find helpful. I don't think there is, Your Honor, and here's why. Those principles and the treatises that talk about principles surrounding restitution, principles surrounding subrogation liens don't apply to equitable liens by agreement. That's what Saraboff made clear. So when it comes to consulting these equitable treatises, that's clearly why my counterparts talk about those, but none of them deal with equitable liens by agreement. And Justice Roberts, towards the very end of the opinion at page 368, cited the Palmer Treatise, where Palmer acknowledges they're different species of relief. The principles that apply to one don't necessarily apply to the other. That's why the Supreme Court in Saraboff said, even though strict tracing may be required for restitution purposes, it's not required where it's an equitable lien by agreement. So there's very strong and compelling reasons why the court made distinctions between. So we keep getting back to the contractual language that's. We do, Your Honor. And that's what your position, that's the linchpin of your position. The linchpin of my position is that Saraboff provided the, there's certain requirements. A plan has to be worded in a certain way. It has to seek a specified portion of a fund. It has to identify the fund. It has to seek recovery from the party in possession of the funds. But, yes, absolutely our position is that by sanctioning an equitable lien by agreement, the Supreme Court has recognized that plans can enforce these provisions. Let me interject a question, if I may. And I might have gotten this wrong in my reading, but did the district court here just enforce the right as if it were a contract right? That is, did the district court pay attention to the language of 502A3 and assess whether the recovery in the contract is appropriate and equitable? If the district court didn't use those kinds of terms or that kind of analysis, wouldn't it be the most traditional approach for us to remand it to the district court, say you have to justify your ruling in terms of the statute's language? Well, I think the court, in all but one respect, which I'll mention, but in all but one respect, the court did apply Section 502A3 in Saraboff and said that the CGI plan terms were clear and unambiguous with respect to its reimbursement rights. And it was interpreting the statute. And it was interpreting Saraboff, which provides for an equitable lien by agreement. So that is, by definition, applying the words of the statute. The words of the statute, again, appropriate equitable relief, refers to categories of relief typically available in equity. It's simply hard for me to fathom that the rule is it's completely on a case-by-case basis whether the plan language is enforced or not. That can't have been what the unanimous Supreme Court decision meant when they shined the spotlight on an equitable lien by agreement. So I think the district court was construing this statutory language and was rejecting the argument of defendants that you could impose these common law equitable limitations to override plan language in ERISA. Now, the one exception, of course, is the common fund reduction that the court ignored. And that ties into the second part of this appeal. What the court below did was it reasoned that because the law firm couldn't be sued under 502A3, therefore it was able to pull its fees and costs out of the reimbursement amount. Now, I frankly don't see how one follows from the other. The question of whether or not CGI can enforce plan language which says, we are not responsible for your attorney's fees vis-à-vis Ms. Rose, has nothing to do with whether or not it can sue the law firm that's in possession of the funds. So one doesn't lead to the other. I think that conclusion was clearly an error regardless of what you find regarding defendant status under 502A3. But I think the court's conclusion on defendant status under 502A3 was very mistaken. And the issue under 502A3, as this court has now recognized in the Sear decision on Bonk, is that the text of the statute contains no limitation on who may be named as a defendant. The law firm was named because they were in possession of funds to which the plan claimed an equitable lien. And there's no separate or special rule whether you're a law firm or a trustee or an ERISA plan participant or beneficiary. If you possess a fund over which the plan claims a preexisting equitable lien, you are subject to suit under Section 502A3. That's under the Harris Trust case, and that's under Longaberger of the Sixth Circuit and the Fifth Circuit decision in Bombardier. So how much money is in the fund right now, roughly? Roughly $31,000. Did they take their attorney's fees out? They took their attorney's fees out first. So the total recovery was $376,000. From that, the Nelson firm took about $140,000 in costs and fees. They gave the rest to Ms. Rose. They did set aside $31,000 in trust. Which was the amount you're looking for, right? Correct, which was the amount of the lien. So all you need is the trust money back. You don't need anything else from the attorneys. Well, that's correct. However, what the Nelson firm did in ignoring the plan lien and dispersing to itself means they possess. It has to come from a fund. Whether that fund is the amount they separately set aside in trust or say they hadn't, say they didn't do that and it was all attorney's fees that they possessed or it was funds that were dispersed to Ms. Rose, the equitable lien by agreement and under Saraboff, they would be entitled to reach into one or the other fund. But it's critical to be able to name the party that possesses the fund. So if you win, all you want is $31,000, right? That's what you want. Correct. And that's in a fund somewhere. That's in a trust account maintained by the law firm. That's correct. So why do you have to recover against the attorneys? I mean, if you win, you get the money. They'll give you the money, right? That's correct. But they're technically in possession of the money. Technical argument. That's what you want. Well, it's a technical argument, and there are certainly situations, and AC Houston presented one of them, there's certainly going to be situations where the law firm doesn't maintain the amount in trust and just disperses to itself and disperses to its client. This is one of those cases where the law firm did the right thing, clearly, right? They took the money, they set it aside, and there it is. And if they lose, it goes to you. In the respect that they at least maintain the corpus in trust, they did the right thing. They did the wrong thing by dispersing to themselves first. I think that's still wrongful conduct. Why does that matter if the money that you won is still safeguarded? Why does it matter? Because the plan's lien had priority. In other words, as soon as the settlement came into existence, the plan should have been paid first, not the lawyer and not Ms. Rose. That's the principle. And I think Gettner no longer controls because that arose before Harris Trust and its interpretation of 50283 and defendant status. So there's implications to a holding that Gettner remains the law because you can clearly see situations. It's not this case, but you can clearly see situations where it's been. But Ms. Rose has a dispute with CGI about whether it's entitled to that money. So it doesn't seem to me it is wrong for the law firm to put it into trust. Well, I think it is when the plan language is clear. I think that's wrong. But, again, we're not seeking to hold them personally liable. And we're seeking in rem appropriate act of relief. It doesn't matter if she had transferred it to a special needs trust. Were they dismissed with prejudice by the district court? I believe they were, Your Honor. Okay. Well, I think we're at the close of your argument. I'm going to give Mr. Wessler another minute. So if you want another minute, you got it. Thank you, Your Honor. But you should take it now if you want. He's done. You're done, right? I think the court understands the issue. Thank you again for your travels. Now, Mr. Wessler. Thank you, Your Honor. I think that argument, it became incredibly clear how divorced CGI's position is from what it means to be in equity. And I think what the court heard CGI's counsel say was that it cannot be that you can allow courts to resolve these issues on a case-by-case basis. Here's what the Supreme Court said in Holland v. Florida. And this is cited in our brief. This was a case the Supreme Court decided in 2010. It said the exercise of a court's equity powers must be made on a case-by-case basis. There, I don't think, is any clear explanation for how divorced CGI's position is from what it means to be in equity. What it means to be in equity is that there are rules, there are principles that govern how a court is to fashion relief. And you'll read CGI's briefs and you will see zero reference to any of the treatises or rules or authorities that govern what it means to be in equity. And that's because they are all contrary to CGI's position. I'd like to focus the rest of my time, if I can, on what CGI's argument is about Saraboff, because I think it's a critical and important point that this court needs to understand. What you heard was that CGI's position is that Saraboff has already resolved the issue that this court faces. And that's because they said that what the plan in Saraboff was seeking was an equitable lien by agreement and that somehow that means that you are not entitled to limit the availability of relief any other way other than whatever it says in the actual plan document itself. And I think that is an absolute misreading of Saraboff. I think it takes Saraboff incredibly too far. And I would urge this court to look at U.S. Airways v. McCutcheon for why that's true, but let me try to explain it right now. The only question that was presented to the Supreme Court in Saraboff and the only question that the court in Saraboff resolved was whether the plan could maintain an action for equitable reimbursement at all. It was a threshold question. Up until 2006, it was not clear that plans could ever come after injury victims for money. And in 2006, for the first time, the Supreme Court said, yes, you can. But they did that by distinguishing the types of remedies that were available to the plan. And they said if the plan were to seek a subrogation lien, it could not maintain the action in equity under 502A3 because that type of remedy, looking to the treatises, is automatically defeated by equitable defenses like the Mayko Rule. But they then turned to equitable liens, and they said equitable liens, on the other hand, are not automatically defeated, so you can bring the action in the first place. But the fact that you can bring the action in the first place doesn't at all answer the question that this court now has to resolve, which is if you're in a court of equity and you can bring an equitable lien, how much do you get? What is the relief to which you're entitled? And to that question, the Supreme Court explicitly left it unresolved. Footnote two, they said there's a question about what appropriate means. The parties didn't brief it. They didn't raise it, so we're not going to answer it. And to that question, the answer that this court has to recognize is what do the treatises say? That's what it means to be in equity, and that's what has to happen. Thank you so much. Thank you, Mr. Wessler. We've got to bring this to a close. I want to thank both Mr. Wessler and Mr. Lifshultz for very fine arguments. It's a difficult issue, and I don't think our circuit has plumbed the depths of Section 502A3. So I'm glad that when we try to figure it out here, we've had the benefit of such excellent lawyers and advocates. I agree. So that case, CGI, shall be submitted.
judges: Beistline, Schroeder, Gould